NEWMEYER & DILLION LLP
FRANCIS E. QUINLAN, CBN 84690
Francis.Quinlan@ndlf.com
895 Dove Street, 5th Floor
Newport Beach, California  92660
(949) 854-7000; (949) 854-7099 (Fax)

Attorneys for Defendant
JOSEPH ALVAREZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>vs.<br><br>JOSEPH ALVAREZ,<br><br>                    Defendant. | CASE NO.:        SA CR 18-00048<br>CTRM:              6B<br>JUDGE:   Hon. Douglas F. McCormick<br><br>**DEFENDANT JOSEPH ALVAREZ'S REPLY TO THE GOVERNMENT'S STATEMENT RE: PRESENTENCE REPORT, TO THE SECOND REVISED PRESENTENCE REPORT; OBJECTIONS TO THE SECOND REVISED PRESENTENCE REPORT; DECLARATION OF FRANCIS E. QUINLAN IN SUPPORT THEROF**<br><br>Date:     March 6, 2019<br>Time:     9:00 a.m.<br>Ctrm:     6B<br><br>FILE DATE:           March 9, 2018<br>TRIAL DATE SET:   No Date Set |

## 1.    **INTRODUCTION**

Defendant, Joseph Alvarez, respectfully asks this court to impose a sentence that conforms to that recommended by the United States Attorney consistent with his recent payment of the full restitution of $177,037.01 delivered to the Department of Labor by cashier's check at the last court hearing (Ex. 1):

NEWMEYER & DILLION LLP

- A one-year term of probation under the terms and conditions set forth in the Revised (second) probation officer's Recommendation Letter dated January 24, 2019.
- An order of restitution for $177,037.01 which reflects that obligation to have been satisfied in full by payment to the Department of Labor as promised in the defendant's plea agreement with the U.S. Attorney's office.
- A $10.00 special assessment.

Defendant also requests the court adopt the following portions of the U.S. Probation Officer's second revised sentence recommendation letter dated January 24, 2019:

- A $10.00 special assessment.
- Waiver of all fines as the court finds that the defendant has established that he is unable to pay and is not likely to become able to pay any fine in addition to restitution.

The probation officer recommended a sentence of probation with the following comments:  "A custodial sentence would appear to be greater than necessary under the circumstances of this case.  Two years of probation is appropriate to provide just punishment and reflect the seriousness of the offense as it is in keeping with similarly situated offenders.  It also provides adequate deterrence to criminal conduct and promotes respect for the law as it places restrictions and requirements on Alvarez.  Alvarez is gainfully employed and he should be allowed the opportunity to maintain his employment to continue his progress of becoming a productive member of society again.  Alvarez presents a low risk of threat to the community."

Defendant, though no longer a licensed administrator of care homes, shoulders the daily burden of seeing to the supply, maintenance and logistics of operating the care homes.  Because the economics of such 24/7 care is consistently

NEWMEYER & DILLION LLP

strained defendant spends long hours seeing to the every need of the homes because the caregivers are unable to leave those in their care.  For that reason, defendant requests the probation ordered be set at one year which should be a sufficient reminder to him of his obligations under law without otherwise burdening the probation system with a second year of supervision.

Defendant recognizes that the court is considering a period of incarceration. He wishes to express his remorse to the court and will do so in person at his sentencing hearing.  He does not take lightly the plea he entered and asks only that the court understand that he has been stressed in gathering the funds to pay the restitution.  He applied for a conventional loan against his home and the one mortgaged care home not rented from others.  He was denied the loan because of other obligations and had to rely on friends and family for the restitution funds.  He will be under significant financial pressure for some time to address not only his financial obligations but also the need to care for his wife and three young children.

Under separate correspondence, the court was sent a number of letters of support for Mr. Alvarez from individual caregivers and peers who consistently expressed their admiration of the benefit to society that Mr. Alvarez delivers in his humane operation of care homes at low cost.  There are a number of hospitals and agencies that place patients in neighborhood residential care homes because, frankly, it is cheaper to do so than keep them in hospital beds.  Mr. Alvarez has been lauded for creating a caring family atmosphere in the homes in contrast to large care institutions that are impersonal and more expensive.  He has also taken in homeless persons, and cared for them at his cost until he is able to help them obtain state and federal benefits.  There is a societal benefit to the small residential care home solution.  The policy differences, especially employment issues involving caregivers who live in the homes and take their meals there, between state agencies and the federal government, present significant and confusing challenges to care home managers as one writer highlighted in his support letter.

NEWMEYER & DILLION LLP

REPLY TO GOVERNMENT'S STATEMENT
AND OBJECTION TO SECOND REVISED
PRESENTENCING REPORT

Mr. Alvarez respectfully suggests an alternative to incarceration could be found in his support of the homeless.  He advises that he would willingly place at least one homeless person in each of the care homes he advises and assist those persons in their applications for benefits.  The challenge of caring for the homeless will continue to require multiple and creative solutions.  Mr. Alvarez respectfully requests that he be allowed to serve in that way rather than by incarceration.

**2.**     **OBJECTIONS TO PRESENTENCE REPORT**

The second revised Presentence Report conforms, with the exception of the two years recommended probation term, to the U.S Attorney's recommendation. The court's tentative consideration of a three month period of incarceration on certain specified considerations reveals material deficiencies in the Presentence Report as revised in the following elements:

- The report does not provide detail on Mr. Alvarez' financial condition including reference to income shown in personal tax returns, some credit impairment and LLC tax returns which would show the care homes do not produce significant net income.
- The report does not credit by way of mitigation the 2014 and 2015 negotiated "bonuses" to the LLC caregiver members when the LLC was terminated in 2015, nor does it reflect that the LLC was terminated as a form of remediation to conform to the Department of Labor's determination re employment and overtime requirements.
- The report does not clarify that the "second home" referenced by the court is used as a care home and it is mortgaged.  All the other care homes are leased and Mr. Alvarez is liable personally on those leases. It also reflects that he has some equity in his home in Irvine, but he reported a sizable mortgage which precludes a home equity loan.  In short, Mr. Alvarez was and is unable to borrow conventionally and were he to sell the residential care home which he obviously could do,

NEWMEYER & DILLION LLP

REPLY TO GOVERNMENT'S STATEMENT AND OBJECTION TO SECOND REVISED PRESENTENCING REPORT

the equity would be substantially reduced by the state and federal capital gains taxes.  In essence, the apparent ability to borrow against equity is not as easy as it might appear.  It is the judgment of both the probation officer and the undersigned that Mr. Alvarez, at this point, given the funds he had to borrow to pay the restitution, is in difficult financial circumstances.

In support for the objections to the Presentence Report listed above, attached is a declaration of the undersigned providing amplification for those objections. Perhaps the most significant material deficiency in the Presentence Report is simply the lack of inclusion of detail which would paint a much more understandable picture of the operation of care homes which, in California, are referred to as Residential Care Facilities for the Elderly (RCFEs), authorized under California law.  Background research performed by the undersigned on the oversight of residential care facilities for the elderly reflects that there are about 9,000 licensed RCFEs in California alone.  Further, that when elderly injured or impaired are in hospitals, they may not be discharged back to their homes if they are not able to care for themselves directly or have a family member to do it, but they must be released to a care facility like the ones Mr. Alvarez administers.  The cost to Medicare and Medi-Cal for care for such injured elderly in hospitals is reported to be approximately $2,000 per day.  Care homes such as those Mr. Alvarez administers provide a much lower cost to the government and non profit hospitals for proper care of the injured or impaired elderly.  The California Department of Social Services audits RCFEs and has audited the care homes Mr. Alvarez advises. He has not received a negative report.  Mr. Alvarez held an RCFE administrators' license issued by the Department of Social Services.  Mr. Alvarez recently relinquished his administrator license but continues to serve as a subject matter consultant to the care home administrators.

Further, the Department of Social Services audited the Agape Cottage Care

NEWMEYER & DILLION LLP

Partners LLC tax returns, and all other filed membership and ownership disclosures were provided to the auditors including proof of tax returns filed by the caregivers. And, that audit also examined workers' compensation coverage carried for the benefit of the caregivers. Background research also reflects that the State of California does not generally challenge the caregivers forming their own limited liability companies (no reported cases) to be able to provide care under a 24/7 operation requirement. On the other hand, background research reflects that the federal government has taken, as is obvious in this case, a much more rigid position with respect to 24/7 care and the overtime requirements as seen by the Department of Labor. This background information is not meant to suggest in the slightest that Mr. Alvarez's mistake in failing to honor the wage agreement with the Department of Labor was not wholly improper. It was, but some understanding of his mindset up to the point he signed the Department of Labor agreement that, in fact, he was operating in a way the Department of Social Services in California did not challenge, in large part, because he was providing a benefit to both state and federal government.

The Presentence Report only characterizes Mr. Alvarez as "financially unable to pay a fine." Had the report characterized the overall financial status of the LLC and the operation of the care homes which Mr. Alvarez administered, some mitigative credit could have been given to the net conclusion that the care homes, under the Department of Labor's mandate that overtime be paid for 24/7 care, were not likely to remain solvent which by implication might explain the pressure Mr. Alvarez felt to restore operating funds to the LLC.

Further, the Presentence Report does not reflect Mr. Alvarez's investment in the caregiving business and that of several family members he reported to the probation officer had also provided initial capital. Early examination of the total financial picture of operating care homes under the Department of Labor's overtime mandate might well have made it more clear to Mr. Alvarez that it was a risky

1   financial proposition to operate the homes adhering strictly to the Department of

2   Labor's overtime mandates. Unfortunately he sought and followed flawed advice

3   from his bookkeeper/accountant who candidly explained in his letter to the court

4   the thought process behind the LLC model.

5          Also, not taken into consideration in the Presentence Report were the long

6   hours Mr. Alvarez put in and continues to put in to keep the care homes operating

7   because the caregivers must generally remain on the premises unless relieved. Mr.

8   Alvarez not only provided that relief overtime but he was the one who would run

9   even small errands to provide supplies and otherwise ensure the care homes were

10  meeting the Department of Social Services standards for operation.  It is not

11  unusual for entrepreneurs to put that kind of time in but if it is quantified in terms

12  of the value of his own labor when contrasted to the cost of operation, Mr. Alvarez

13  could be seen as hardworking and caring and not a coercive ogre of a greedy owner

14  taking unfair advantage of workers.

15         Also missing from the Presentence report was any discussion of the effect of

16  the Department of Labor's disregard for the LLC model of operation of 24/7 care

17  homes and consideration under law the individual members could form their own

18  LLCs and operate those care homes without ownership by any other parties without

19  running afoul of Department of Labor dictates. Some of the caregivers expressed in

20  their letters to the court a desire to frame their own economic destiny through the

21  LLC model.  Again, this is not to suggest that Mr. Alvarez did not make a serious

22  mistake in not honoring the wage agreement, but rather to suggest that there are, in

23  particular given the increasing number of elderly requiring care throughout our

24  nation, serious questions as to how the disparities between State and Federal policy

25  goals and mandates can be resolved to provide elder care in a fiscally sound way for

26  all parties concerned.

27         The Presentence report does not mention the potential mitigative effect of the

28  distributions of "bonuses" to the LLC caregiver members in 2014 and 2015.  It also

NEWMEYER & DILLION LLP

1   does not mention that Mr. Alvarez, in the face of the Department of Labor's

2   determination, with the assistance of his accountant, terminated the Agape Care

3   Partners LLC in 2015 thus remediating the model that ran afoul of the Department

4   of Labor's position on overtime for 24/7 caregivers.  The report also does not

5   mention that the caregivers were residing in the care homes and taking their meals

6   all at cost to the caregiving operation.  There are a number of employment

7   constructs that take into account the monetary value of residing on premises as well

8   as having one's meals furnished.  None of that was taken into account at the

9   Department of Labor wage agreement level nor was it mentioned in the Presentence

10  Report.

11       In preparing this pleading the undersigned reviewed a banker box full of

12  records and attempted to summarize key elements of information that support the

13  statements and argument herein by way of a personal declaration. The court is

14  requested to accept that appending voluminous exhibits already furnished to the

15  government in full cooperation would create an unwieldy filing.

16  **3.    <u>CONCLUSION.</u>**

17       It is the goal of the undersigned in Mr. Alvarez's behalf to provide additional

18  information so that the picture of his work and activities taken as a whole reflects

19  the character of a decent, caring, hardworking elder care administrator and family

20  man with a wife and three children to support, and now an additional obligation of

21  the borrowed $177,000.00 restitution he now must repay. Most of the caregiver

22  members of the LLC wrote to the court to report that they were not preyed upon by

23  an abusive owner as is often alleged in such cases and found him a generous, good

24  example. Mr. Alvarez ask that the manner in which he terminated the LLC in 2015

25  and paid negotiated bonuses to the caregiver members in 2014 and 2015 will be

26  seen as ameliorating the stark appearance of a six figure violation and remedying

27  the LLC model the Department of Labor found objectionable.

28  / / /

NEWMEYER & DILLION LLP

REPLY TO GOVERNMENT'S STATEMENT
AND OBJECTION TO SECOND REVISED
PRESENTENCING REPORT

1    For all these reasons, Mr. Alvarez respectfully requests the court accept his

2  statement of remorse and consider a sentence as described above without any

3  incarceration.

4  Dated:  February 12, 2019                    NEWMEYER & DILLION LLP

5

6                                                    By: */s/ Francis E. Quinlan*
7                                                          Francis E. Quinlan
                                                          Attorneys for Defendant
8                                                          JOSEPH ALVAREZ

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NEWMEYER & DILLION LLP

FB004   W433  4045/0342

PRINTED ON LINEMARK PAPER - HOLD TO LIGHT TO VIEW, FOR ADDITIONAL SECURITY FEATURES SEE BACK

---

**CASHIER'S CHECK**

SERIAL #: 0082502500
ACCOUNT#: 4861-505303

**January 28, 2019**

Payee Address:
Memo:

***One hundred seventy-seven thousand thirty-seven dollars and 01 cent***

**\*\*$177,037.01\*\***

PAY TO THE ORDER OF   \*\*\*US DEPARTMENT OF LABOR -\*\*\*
\*\*\*\*WAGE + HOUR DIVISION\*\*\*

NOTICE TO PURCHASER -- IF THIS INSTRUMENT IS LOST,
STOLEN OR DESTROYED, YOU MAY REQUEST CANCELLATION
AND REISSUANCE, AS A CONDITION TO CANCELLATION AND
REISSUANCE, WELLS FARGO BANK MAY IMPOSE A FEE AND
REQUIRE AN INDEMNITY AGREEMENT AND BOND.

VOID IF OVER US $ 177,037.01

**NON-NEGOTIABLE**

0000828        11-24
Office AU #    1210(6)

Remitter:        JOSEPH U ALVAREZ
Purchaser:       JOSEPH U ALVAREZ
Purchaser Account: 0747853947
Funding Source:  Paper Item(s)   cu010728
Operator I.D.:   u506187

WELLS FARGO BANK, N.A.
10060 SLATER AVE
FOUNTAIN VALLEY, CA 92708
FOR INQUIRIES CALL (480) 394-3122

**Purchaser Copy**

---

**CASHIER'S CHECK**

0082502500

**January 28, 2019**

Payee Address:
Memo:

***One hundred seventy-seven thousand thirty-seven dollars and 01 cent***

\*\*$177,037.01\*\*

PAY TO THE ORDER OF   \*\*\*US DEPARTMENT OF LABOR -\*\*\*
\*\*\*\*WAGE + HOUR DIVISION\*\*\*

VOID IF OVER US $ 177,037.01

0000828        11-24
Office AU #    1210(6)

Remitter:        JOSEPH U ALVAREZ
Operator I.D.:   u506187        cu010728

WELLS FARGO BANK, N.A.
10060 SLATER AVE
FOUNTAIN VALLEY, CA 92708
FOR INQUIRIES CALL (480) 394-3122

AUTHORIZED SIGNATURE

AUTHORIZED SIGNATURE

Security Features Included.   Details on Back.

⑆008250 2500⑈  ⑈1 2⑇0000 248⑆:486 1   50303⑈

Exhibit 1 - Page 15

Exhibit 1 - Page 10

## <u>DECLARATION OF FRANCIS E. QUINLAN</u>

I, Francis E. Quinlan, declare as follows:

1.      I am an attorney licensed to practice before all state and federal courts of California, and also a member of the Colorado State Bar.  If called to testify as to the accuracy of the information contained herein I am able to do so of my own knowledge.

2.      I make this Declaration in support of the Response to Sentencing Recommendations and Objection to the Presentence Report. As noted in the response to which this declaration is attached, I reexamined a banker box of tax, corporation, LLC, bank and other records related to the case and wrote this declaration in summary of key, supportable elements I concluded might be of assistance to the court in its sentencing decision. I also offer a personal opinion in this declaration which I ask the court to accept in my duty as defense counsel and not a presentation of Mr. Alvarez' attempt at justification for his crime.

3.      In terms of background, it seemed applicable to my serving as counsel to the defendant in this case that I served a three-year tour with the Federal Bureau of Investigation and investigated a number of cases involving false statements to the government, embezzlement, and white collar crime, bank fraud and tax fraud, as well as basic fraud crimes against the government.  I have also obtained a master's degree in tax law (LLM) and served for a number of years as counsel to various banks and savings and loan associations.  Much of my bank work was related to the mortgage granting process.  I have also served for over 20 years in various not for profit and for profit corporate entities as a member of boards of directors and boards of trustees, as an audit committee chairman and as a risk committee chairman.  I served for 7 years on the board of the State Compensation Insurance Fund of California and chaired its Audit Committee, and served also on its Investment Committee.  I am currently serving both public and private corporations involving both the financial industry and the real estate industry.  When I took on

NEWMEYER & DILLION LLP

the defense of Mr. Alvarez, I expected that my professional background would be helpful in sorting through employer obligations as well as the limited liability company and corporate structure that he had set up with the advice of his accountant.  I also thought I could be helpful in analyzing his tax returns, the tax returns of the LLC, as well as the corporation, all of which information was ultimately provided both to the U.S. Attorney and to the probation officer.  I also thought my background would be helpful in sorting through the movement of money through the LLC bank account and provide an ability to tie money paid to the individual LLC members under the Department of Labor Wage Agreement, as well as to track money paid by the LLC in the form of annual "bonuses" which were negotiated by a senior LLC member who represented all of the caregivers. His name is Gideon Limpado.

4.     I was able to work quite cooperatively with Mr. Daniel Ahn of the U.S. Attorney's Office and Ms. Pineda, the Department of Labor Investigator.  Both were willing to listen to the argument that not all of the money paid to the caregivers under the Department of Labor Order was returned to the LLC by the caregivers.  Ultimately, we were able to conclude that several of the caregivers had not paid anything back to the LLC, and therefore the original restitution amount of $196,541.30 specified as restitution to the Department of Labor in the plea agreement versus the amount collectively agreed was represented by LLC bank records and data reflected checks negotiated from the caregivers amounted only to $177,037.01.

5.     In addition to negotiating with Mr. Ahn and Ms. Pineda an agreed number reducing the plea agreement restitution to $177,037.01, I also presented information concerning the "negotiated bonuses" paid to the LLC caregiver members for tax years 2014 and 2015.  In 2014, the amount paid to the caregivers in addition to their regular compensation was $79,075.00.  In 2015, the amount paid to the caregiver members in addition to their regular compensation was $48,465.67.

NEWMEYER & DILLION LLP

Those two sums are, now that the agreed restitution has been paid, $147,540.67 in excess of the wage and overtime required by the Department of Labor to have been paid in a straight employer- employee model.  Although I argued to Mr. Ahn that this "negotiated bonus"money should be considered as an offset to the restitution, he said the government was not in a position to accept that argument and declined to credit the amount.  He was respectful and willing to listen to the argument, and a credit to his office.  Nonetheless, that is a substantial sum of money that, coupled with the funds paid in restitution, could be considered a mitigative payment.  The mitigative effect might also be considered in terms of the Department of Labor's rejection of the limited liability company structure, which was designed to avoid the problem of providing 24/7 care in individual homes where the caregivers lived and took their meals as part of their compensation, with the need to calculate overtime.  Not arguing the policy difference inherent in that and the fact that there are thousands of small residential care homes in California, the disregard of the LLC structure by the Department of Labor wage and hour investigator and that investigator's refusal to consider the LLC "bonuses" paid in 2014 and 2015, reflects a substantial amount of additional money paid to the caregivers in excess of their Department of Labor determined wages and mandatory overtime.  Because the caregivers had their own representative in the form of Mr. Limpado, who negotiated a formulaic bonus in those two years, and the fact that those payments were not considered in the overtime calculation nor in the restitution calculation, I would respectfully submit to the court it is worthy of consideration as a substantial mitigative financial benefit to the caregivers.  Equally, I would respectfully submit that the financial cost of that restitution in addition to the LLC having paid out bonuses in 2014 and 2015, is a financial burden that Mr. Alvarez and his wife have undertaken personally.

6.     In addition to requesting the court consider the mitigative effect of the LLC bonuses, the court is also respectfully requested to consider that in the process

NEWMEYER & DILLION LLP

NEWMEYER & DILLION LLP

of attempting to resolve the overtime calculation challenge and the disregard of the LLC model, Mr. Alvarez, with the assistance of his accountant who has set up the model, terminated the LLC in 2015.  I respectfully ask the court to consider the Office of the United States Attorney's publication 9-28.000 – Principles of Federal Prosecution of Business Organizations.  Section 9-28.1000 entitled Restitution and Mediation offers guidance with respect to a prosecutor's decision to charge a corporation in the light of the corporation having voluntarily taken remedial actions, such as improving an existing compliance program or disciplining wrongdoers.  In this case, the termination of the LLC model for management of the caregivers is a terminal remedial action.  Likewise, Mr. Alvarez' prosecution as an individual even though he signed the Department of Labor Wage Agreement as manager of the LLC, reflects a direct discipline of the individual who has taken responsibility for the violation.  I make this reference to the federal prosecutors' guidance on prosecuting business organizations for the sole purpose of showing that as Mr. Alvarez stands before the court for sentencing, not only has the corporate model that ran afoul of the Department of Labor's decision been ended, Mr. Alvarez, himself, has taken full responsibility and paid the restitution in advance of sentencing.

7.      I would also offer the court a personal opinion with respect to the advice given by Mr. Alvarez' accountant to set up the LLC model of caregiver manager.  It is unfortunate that the case unwound in the Department of Labor for more than a year and that it was not immediately addressed as an administrative violation that required immediate action.  Had that happened, and had the LLC model been rejected by competent employment counsel before it was created, Mr. Alvarez would not have found himself in the position that he did where he made the serious error of trying to restore operating funds to the LLC in the manner he did. He has discussed this extensively with me and understands the serious mistake he made.  While this is not to suggest that reliance on his accountant in some way

should mitigate the mistake Mr. Alvarez made, I would simply suggest to the court that bad advice along the way and a wrong decision at the culmination of it is the sort of thing that results in having to stand before a federal judge for sentencing.  It is regrettable, but on the face of it, Mr. Alvarez has accepted rejection of the LLC model, terminated it and paid the restitution.  We would ask the court to consider that in terms of its indication that incarceration might be imposed.

8.     Mr. Alvarez reported to the Probation Officer that he has some equity in his home in Irvine, but he also reported a sizable mortgage in excess of $900,000. He also reported that there is a mortgage against the residence he and his wife own that is used as a care home.  In short, in attempting to borrow to pay the restitution Mr. Alvarez was unable to borrow conventionally and were he to sell the residential care home he obviously could do, the equity would be substantially reduced by the state and federal capital gains taxes.  In essence, the apparent ability to borrow against equity is not as easy as it might appear. It is the judgment of both the probation officer and the undersigned that Mr. Alvarez, at this point, given the funds he had to borrow to pay the restitution, is in difficult financial circumstances. Incarceration would only exacerbate that condition as the Probation Officer concludes, and most likely visit a significant emotional impact to his wife and three young children.

I declare under penalty of perjury under the laws of the State of California and of the United States of America that the foregoing is true and correct.

Executed this 12th day of February, 2019, at Newport Beach, California.

_/s/ Francis E. Quinlan_
Francis E. Quinlan